IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**MATIAS P. GARCIA,**

      Plaintiff,

    vs.                                    **No. 2:11-CV-00554-MCA-CG**

**WILLIAM C. ARMIJO, WILLIAM
BILLY ROMERO and BOARD OF
REGENTS, NEW MEXICO
INSTITUTE OF MINING AND
TECHNOLOGY,**

      Defendants.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendants' Motion for Summary Judgment* [Doc. 32]. Having considered the submissions, the relevant case law, and otherwise being fully advised in the premises, the Court grants in part and denies in part Defendants' motion.

## I.    BACKGROUND

On May 21, 2009, Plaintiff Matias P. Garcia was operating a motor vehicle when he was stopped by Defendant, William C. Armijo (hereinafter "Officer Armijo"), a campus police officer employed by the New Mexico Institute of Mining and Technology. [Docs. 32 and 34] Officer Armijo was no longer on campus property when he conducted the stop.   [Doc. 32, undisputed fact #6]

Officer Armijo called the Socorro Police Department to assist him with the traffic stop.  [Doc. 32, undisputed fact #8] Rocky Fernandez and Wesley Maulden of the Socorro Police Department intercepted Plaintiff's vehicle and stopped him, ultimately arresting Plaintiff under suspicion of Driving while Intoxicated. [Doc. 32, undisputed fact #10]  At a later administrative hearing regarding the revocation of Plaintiff's driver's license, New Mexico Department of Taxation and Revenue Hearing Officer Annette N. DuBois found that the Socorro Police Department lacked reasonable suspicion to stop Plaintiff and re-issued Plaintiff's drivers license. [Doc. 32, undisputed fact #14]  Officer Armijo did not testify at the administrative hearing. [Doc. 32, undisputed fact #15]

On May 23, 2011, Plaintiff filed a *Complaint–Civil Action Under New Mexico Tort Claims Act, And Other Causes* in the Seventh Judicial District Court of the State of New Mexico against Officer Armijo, William "Billy" Romero, and the Board of Regents of New Mexico Institute of Mining and Technology (hereinafter "Board of Regents"). [Doc. 1-1]  Plaintiff's *Complaint* alleged that Defendants had "deprived plaintiff of his rights, privileges and immunities secured by the Constitution of New Mexico and its Laws, while acting within the scope of their duties." [Doc. 1-1 at 3]  Plaintiff sent Defendants a "Notice of Tort Claim" pursuant to the New Mexico Tort Claims Act, NMSA 1978, Section 41-4-16, informing Defendants that Officer Armijo "falsely arrested" Plaintiff in violation of Plaintiff's "rights under the United States and New Mexico Constitutions, and under New Mexico's laws applied to both campus and regular policemen." [Doc. 1-1 at 4]  On June 22, 2011, Defendants removed the case to this Court

2

on the basis of federal question jurisdiction because "[t]he allegations of the Complaint reasonably suggest that Plaintiff is seeking claims against Defendants for alleged violations of Plaintiff's rights under the United States Constitution." [Doc. 1]

On December 9, 2011, Defendants filed *Defendants' Motion for Summary Judgment*. [Doc. 32]  Defendants contend that traffic stops are exempt from the jurisdictional boundary requirement of the Fourth Amendment.  [Doc. 32 at 5] They further contend that Officer Armijo is entitled to qualified immunity because the extra-jurisdictional traffic stop did not violate Plaintiff's clearly established constitutional rights.  [Doc. 32 at 8]  Additionally, Defendants contend that the Board of Regents cannot be held vicariously liable for the acts of Officer Armijo because there is no evidence of an "affirmative link between the purported constitutional violation in this case and supervisory control or direction or failure to supervise on the part of the Board of Regents." [Doc. 32 at 10]  Finally, they seek summary judgment on Plaintiffs' false arrest claim because the undisputed material facts establish that Officer Armijo did not arrest Plaintiff. [Doc. 32 at 11]

On June 28, 2012, this Court entered an *Order* instructing the parties to be prepared to address the following issue at the Pretrial Conference scheduled for July 3, 2012: "whether the constitutional claim raised by Plaintiff in his *Complaint–Civil Action Under New Mexico Tort Claims Act, and Other Causes* arises under 42 U.S.C. § 1983, the New Mexico Tort Claims Act, NMSA 1978, Section 41-4-1, *et seq.* or both." [Doc. 42] See generally Wells v. County of Valencia, 644 P.2d 517, 521 (N.M. 1982) ("The Tort

3

Claims Act does not prohibit a plaintiff from bringing an action for damages under the

Tort Claims Act where the plaintiff also pursues, by reason of the same occurrence, an

action against the same government under 42 U.S.C. s 1983."). Both parties informed the

Court that they were unable to attend the Pretrial Conference due to scheduling conflicts.

In response, the Court vacated the Pretrial Conference. [Doc. 43]

On September 13, 2012, the Court informed the parties that, "[i]n order to resolve

the pending *Defendants' Motion for Summary Judgment* [Doc. 32], the Court requires

clarification as to whether the constitutional claims raised by Plaintiff in his

*Complaint–Civil Action Under New Mexico Tort Claims Act, and Other Causes* arises

under 42 U.S.C. § 1983, the New Mexico Tort Claims Act, NMSA 1978, Section 41-4-1,

*et seq.* or both." [Doc. 45]  The Court ordered Plaintiff's counsel "to clarify the legal

basis for his constitutional claims, in writing, on or before Thursday, September 19,

2012." [Doc. 45 (emphasis omitted)]  Plaintiff's counsel did not comply with the Court's

order or request an extension of time in which to do so.

After examining Plaintiff's Complaint the Court is unable to discern whether

Plaintiff's constitutional claims arise under Section 1983, the New Mexico Tort Claims

Act, or both.  Plaintiff has had multiple opportunities to clarify the legal basis of his

constitutional claims, but has failed to do so in violation of the Court's order. See Fed. R.

Civ. P. 12(e) ("If the Court orders a more definite statement and the order is not obeyed

within 14 days afer notice of the order or within the time the court sets, the court may

strike the pleading or issue any other appropriate order."); 2 Moore's Federal Practice §

4

12.36[1] (3d Ed. 2012) ("[C]ourts will occasionally order a more definite statement *sua sponte*, which they have the freedom to do."). *Defendants' Motion for Summary Judgment*, and Plaintiff's response thereto, solely focus on Section 1983. In accordance with the analysis articulated by the parties in the briefing, the Court construes Plaintiff's Complaint as raising constitutional claims solely under Section 1983. In the absence of further guidance from the parties, the Court expresses no opinion with respect to whether Plaintiff's Complaint reasonably can be construed to raise additional constitutional claims under the New Mexico Tort Claims Act and whether summary judgment on these claims is appropriate.

## II.   STANDARDS

Summary judgment under Fed.R.Civ.P. 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When a motion for summary judgment is made and supported as provided in this rule, the adverse party must cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its

case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S.

317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying

a motion for summary judgment must be admissible or usable at trial (although they do

not necessarily need to be presented in a form admissible at trial).  See Celotex, 477 U.S.

at 324.  It is not the court's role, however, to weigh the evidence, assess the credibility of

witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather,

the Court assumes the evidence of the non-moving party to be true, resolves all doubts

against the moving party, construes all evidence in the light most favorable to the

non-moving party, and draws all reasonable inferences in the non-moving party's favor.

See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

Fed. R. Civ. P. 56(c) allows the use of affidavits to support or oppose a motion for

summary judgment, provided that they appear in the form specified by Fed. R. Civ. P.

56(e).  "To survive summary judgment, 'nonmovant's affidavits must be based upon

personal knowledge and set forth facts that would be admissible in evidence; conclusory

and self-serving affidavits are not sufficient.'"  Murray v. City of Sapulpa, 45 F.3d 1417,

1422 (10th Cir. 1995) (quoting Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir.1991)).

## III.   DISCUSSION

### A.   Admissible or Usable Evidence

Plaintiff contends that the following exhibits submitted in support *Defendants'*

*Motion for Summary Judgment* are inadmissible or unusuable at trial: (1) Exhibit B,

which is Officer Armijo's unsworn report regarding the traffic stop; (2) Exhibit C, which

is a Notice of Result of Administrative Revocation Hearing; and (3) Exhibit D, which is

Officer Fernandez's unsworn supplemental police report.  Defendants respond that these

exhibits are admissible under the public records exception to the hearsay rule.  See Fed.

R. Evid. 803(8).

> Fed. R. Evid. 803(8)(A)(ii) provides as follows:
>
> The following are not excluded by the rule against hearsay, regardless of
> whether the declarant is available as a witness . . .
> * * *
> (8) **Public Records.**  A record or statement of a public office if:
>     (A) it sets out;
>         (I) the office's activities;
>         (ii) a matter observed while under a legal duty to
> report, but not including, in a criminal case, a matter observed by law
> enforcement; or
>         (iii) in a civil case or against the government in a
> criminal case, factual findings from a legally authorized investigation.
>         (B) neither the source of the information nor other
> circumstances indicate a lack of trustworthiness.

"Justification for the exception is the assumption that a public official will perform his

duty properly and the unlikelihood that he will remember details independently of the

record."  Fed. R. Evid. 803, Note to paragraph (8).

Pursuant to this provision, police reports generally are admissible in civil cases.

There is some confusion regarding the admissibility of police reports that are not based on

the officer's first hand knowledge.  Some jurisdictions hold that such reports are

admissible under Fed. R. Evid. 803(8), while others hold that they are not. Compare

United States v. Warren, 42 F.3d 647, 657 (D.C. Cir. 1994) (noting that Fed. R. Evid.

7

803(8) "appears to provide for admission of police officers' statements in public records even in the absence of a demonstration that the statements reflected the officers' personal knowledge.") and 2 McCormick on Evidence § 296 (6th ed. 2009) (observing that investigative reports are admissible under Fed. R. Evid. 803(8) even though they "are often not the product of the declarant's first hand knowledge, required under most hearsay exceptions"), with Miller v. Field, 35 F.3d 1088, 1091 (6th Cir. 1994) ("It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted *but that statements made by third persons under no business duty to report may not*." (internal quotation marks and citation omitted) and Fed. R. Evid. 803, Note to Paragraph 8(c) ("police reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer").  The police reports at issue in this case are based on the first hand knowledge of Officers Armijo and Fernandez, both of whom had a public duty to investigate and report on violations of criminal law.  See NMSA 1978, Section 29-1-1.  Because Plaintiff has not challenged the authenticity or trustworthiness of the police reports, the Court concludes that these reports are admissible as public records under Fed. R. Evid. 803(8).

Plaintiff contends that the police reports nonetheless are inadmissible because they are unsworn.  [Doc. 34 at 2]  This contention is rejected because public documents need not be sworn in order to be admissible under Fed. R. Evid. 803.  Plaintiff's reliance on Johnson v. Weld County, Colorado, 594 F.3d 1202, 1210 (10th Cir. 2010) to support his claim to the contrary is misplaced.  In Johnson, our Tenth Circuit Court of Appeals held

8

that affidavits containing inadmissible hearsay should be disregarded in ruling on a motion for summary judgment because "the *content or substance* of the evidence must be admissible."  Id. (internal quotation marks and citation omitted; emphasis in original). The Court noted that Rule 56 "does nothing to intimate 'hearsay testimony that would be inadmissible at trial' somehow becomes admissible simply by being 'included in an affidavit to defeat summary judgment.' To the contrary, Rule 56 expressly prescribes that a summary judgment affidavit must 'be made on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.'" Id. (Citations omitted).  In this case, Defendants have not submitted affidavits containing unsworn hearsay, but rather police reports that are independently admissible at trial under Fed. R. Evid. 803(8).  Accordingly, Exhibits B and D will be considered by the Court in ruling on *Defendants' Motion for Summary Judgment*.

Exhibit C, which is a Notice of Result of Administrative Revocation Hearing, details the evidence presented and the conclusions drawn by the Administrative Hearing Officer, Annette N. DeBois, at a hearing regarding the revocation of Plaintiff's driver's license.  At the hearing, Officer Fernandez testified that he arrested Plaintiff for driving a motor vehicle under the influence of intoxicating liquor or drugs after observing signs of Plaintiff's intoxication and administering field sobriety tests.  Officer Fernandez was not present for the initial traffic stop, but testified that "Officer Armijo said that the reckless and negligent driving was the basis for trying to stop the vehicle." [Doc. 32-1 at 6] Officer Armijo did not testify at the revocation hearing.  Plaintiff objected to Officer

9

"Fernandez testifying about what Officer Armijo told him as hearsay." Although the "technical rules of evidence do not apply in an administrative revocation hearing," the Hearing Officer found that "the testimony of [Officer] Fernandez about what Officer Armijo told him is not sufficient to establish reasonable suspicion for the stop." Accordingly, the Hearing Officer rescinded the revocation of Plaintiff's driver's license. [Id.]

The Motor Vehicle Division is a public office that is legally authorized to conduct investigations into arrests for driving while under the influence of intoxicating liquor or drugs. See NMSA 1978, § 66-8-112. The Notice of Result of Administrative Revocation Hearing sets forth the Hearing Officer's factual findings from a legally authorized investigation and, therefore, is admissible as a public document under Fed. R. Evid. 803(8)(A)(iii). Cf. State v. Blakley, 90 N.M. 744, 748 (N.M. App. 1977) (holding that a certified record of a driver's license revocation proceeding was admissible as a public record). Because Plaintiff has not challenged the authenticity or trustworthiness of this exhibit, the Court will consider it in ruling on *Defendants' Motion for Summary Judgment*.

B.      *Section 1983*

Section 1983 of Title 42 of the United States Code provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress....

42 U.S.C. § 1983.  To prevail on his Section 1983 claim, Plaintiff must establish the

following:  "(1) a violation of rights protected by the federal Constitution or created by

federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4)

who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any

State or Territory or the District of Columbia."  Summum v. City of Ogden, 297 F.3d

995, 1000 (10th Cir. 2002).

"The doctrine of qualified immunity protects government officials from liability

for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  Pearson v.

Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted).

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to

the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the

constitutional right was clearly established.  Only if the plaintiff has satisfied both steps is

qualified immunity defeated."  Morris v. Noe, 672 F.3d 1185, 1191 (10th Cir. 2012)

(internal quotation marks and citation omitted).  "Failure on either qualified immunity

element is fatal to the plaintiff's cause."  Kerns v. Bader, 663 F.3d 1173, 1180 (10th Cir.

2011); see also Pearson, 555 U.S. at 236 ("The judges of the district courts and the courts

of appeals should be permitted to exercise their sound discretion in deciding which of the

two prongs of the qualified immunity analysis should be addressed first in light of the

circumstances in the particular case at hand.").

I.      *Clearly Established Law*

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Morris, 672 F.3d at 1196 (internal quotation marks and citation omitted).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Id. (internal quotation marks and citation).

In United States v. Gonzales, 535 F.3d 1174 (10th Cir. 2008), the Tenth Circuit Court of Appeals considered the constitutionality of an extra-jurisdictional traffic stop.  In that case, the defendant was stopped by Westminster police officers in a neighboring jurisdiction for turning without using a signal. Id. at 1177.  Under Colorado law, the Westminster officers lacked the authority to conduct an extra-jurisdictional traffic stop because the defendant had not committed a felony or a misdemeanor in the officers' presence. Id. at 1181-82.  "Thus, when the officers stopped Mr. Gonzales for a traffic infraction outside their jurisdiction, they violated Colorado law." Id. at 1182.  Defendant moved to suppress the evidence obtained during the extra-jurisdictional traffic stop under the Fourth Amendment to the United States Constitution.

The Tenth Circuit Court of Appeals reviewed the law governing traffic stops:

A traffic stop constitutes a seizure under the Fourth Amendment and, thus,

12

is constitutionally valid only if it is reasonable. See United States v.
Callarman, 273 F.3d 1284, 1286 (10th Cir.2001). A stop is valid if it is
"based on an observed traffic violation or if the police officer has
reasonable articulable suspicion that a traffic or equipment violation has
occurred or is occurring." Id. (quotation omitted). "[A] routine traffic stop is
a relatively brief encounter and is more analogous to a so-called Terry stop
... than to a formal arrest." Id. at 1286-87 (quotations omitted) (alteration in
original). In determining if reasonable suspicion exists, the subjective
motivations of the officer are irrelevant. Id. at 1286; see also United States
v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir.1995) (noting that in
examining the constitutionality of a traffic stop the "sole inquiry is whether
this particular officer had reasonable suspicion that this particular motorist
violated any one of the multitude of applicable traffic and equipment
regulations of the jurisdiction" (quotation omitted)).

Gonzales, 535 F.3d at 1181.  The Court rejected the defendant's claim that an extra-

jurisdictional traffic stop in violation of state law rises to the level of a federal

constitutional violation.  Id. at 1182.  The Court noted that "[a] State is free to prefer one

search-and-seizure policy among the range of constitutionally permissible options, but its

choice of a more restrictive option does not render the less restrictive ones unreasonable,

and hence unconstitutional."  Id. (internal quotation marks and citation omitted).  Thus,

the Court held that the "question before [it was] whether the officer's actions were

unreasonable within the meaning of the Fourth Amendment."  Id.

To resolve this question, the Court did not examine state law or interests because

The federal test for determining the validity of a traffic stop simply requires
[the Court] to determine whether a traffic violation has occurred: "A traffic
stop is valid under the Fourth Amendment if the stop is based on an
observed traffic violation or if the police officer has reasonable articulable
suspicion that a traffic or equipment violation has occurred or is occurring."
Callarman, 273 F.3d at 1286 (quotation omitted).  It does not require an
examination of a state's law or interests, but focuses instead on whether the
stop was reasonable under the circumstances.

Id. at 1183.  Because the Westminster officers' actions were based on an observed traffic violation, the Court held that the stop was reasonable.  Therefore, "the officers' actions, although in violation of Colorado law, did not rise to the level of a Fourth Amendment violation."  Id.

In Swanson v. Town of Mountain View, Colorado, 577 F.3d 1196, 1198 (10th Cir. 2009), the Court considered whether traffic stops outside of municipal boundaries violated clearly established Fourth Amendment law at the time of the violations.  In that case, the plaintiffs filed a Section 1983 class action suit against various Mountain View police officers and Mount View's police chief based on extra-jurisdictional traffic stops outside the town of Mountain View.  Although the Court's opinion in Gonzales was issued after the district court had rendered summary judgment in favor of the defendants, the Court nonetheless held that it was clearly established law at the time of the incidents that traffic stops "outside the officers' home jurisdiction, even if unauthorized by state law, did not constitute an unlawful seizure under the Fourth Amendment."  Id. at 1203. Thus, the Court held that "even assuming a constitutional violation, a reasonable police officer would not have known in 2006 that the extra-jurisdictional, but within the same state, traffic stops constituted a violation of clearly established Fourth Amendment law, when no dispute exists that the officer observed traffic violations before effectuating the stops. Id. at 1203-04.

Pursuant to Swanson and Gonzales, it was clearly established law on May 21, 2009 that an extra-jurisdictional traffic stop does not violate the Fourth Amendment, so

long as the stop is based on an observed traffic violation or reasonable articulable

suspicion that a traffic violation has occurred or is occurring.  Although Officer Armijo

executed a traffic stop off campus in violation of New Mexico state law, see NMSA

1978, § 29-5-2,[1] this fact alone is insufficient to establish a violation of clearly established

law.

However, Plaintiff does not rely on the extra-jurisdictional nature of the traffic

stop alone.  Instead, Plaintiff contends that the initial traffic stop violated the Fourth

Amendment because Plaintiff was not speeding or driving erratically.

> Under the reasonable suspicion standard, a police officer "must have a
> particularized and objective basis for suspecting the particular person
> stopped of criminal activity." United States v. Cortez, 449 U.S. 411,
> 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). A reasonable suspicion
> analysis is based upon the "totality of the circumstances," and "officers
> [may] draw on their own experience and specialized training to make

----

[1]NMSA 1978, § 29-5-2 provides:
A. The board of regents of each state educational institution designated in Article
12, Section 11 of the constitution of New Mexico may employ and assign duties
of university police officers for the institution.
B. At all times while on duty, university police officers shall carry commissions
of office issued by the board of regents. University police officers have the
powers of peace officers within the exterior boundaries of lands under control of
the board of regents employing them, including public streets and highways
within such boundaries. Within this territory, a university police officer may
enforce all applicable laws, ordinances and campus traffic regulations, but no
arrest for violation of any law, ordinance or campus traffic regulation relating to
motor vehicles is valid unless, at the time of arrest, the university police officer is
wearing:
        (1) a distinctive badge bearing the name of the institution issued to him by
the board of regents; or
        (2) a distinctive uniform prescribed and issued to him by the board of
regents.
New Mexico Institute of Mining and Technology is designated as a state educational institute in
Article 12, Section 11 of the New Mexico Constitution.

inferences from and deductions about the cumulative information available to them that might well elude an untrained person." United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (citations and internal quotation marks omitted). "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." Id. at 274, 122 S.Ct. 744 (citations and internal quotation marks omitted). In the context of a § 1983 action, moreover, the officer "is entitled to qualified immunity if a reasonable officer could have believed that [reasonable suspicion] existed to ... detain the plaintiff"—i.e., if the officer had "arguable reasonable suspicion." Cortez, 478 F.3d at 1120, 1123.

Vondrak v. City of Las Cruces, 535 F.3d 1198, 1206-07 (10th Cir. 2008).

### ii.   *Arguable Reasonable Suspicion*

Whether arguable reasonable suspicion for the traffic stop existed depends on whose version of the facts are believed.  In his police report, Officer Armijo states that he initiated the traffic stop because he observed Plaintiff driving at "a high rate of speed" and accelerating "at a rate of speed that caused the tires to lose traction and [begin] to skid." [Doc. 32-1]  However, Plaintiff submitted two sworn affidavits, his own and that of his passenger, William "Bo" Braswell, in which Plaintiff and Mr. Braswell both aver that Plaintiff was not driving erratically or driving over the speed limit before the traffic stop occurred. [Doc. 34-2]  Given the obvious conflicting evidence with respect to whether Officer Armijo had reasonable articulable suspicion to believe that a traffic violation had occurred or was occurring, the Court concludes that Officer Armijo is not entitled to summary judgment on the basis of qualified immunity.

With respect to this conflicting evidence which has been proffered, Defendants

contend, that Plaintiff's affidavits are insufficient to create a genuine dispute of material fact because they are self-serving and conclusory. [Doc. 40 at 3]  "To survive summary judgment, nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." Murray, 45 F.3d at 1422 (internal quotation marks and citation omitted); see also Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").  "Information and belief have no place in an affidavit supporting a motion for summary judgment or a response thereto."  Told v. Tig Premier Ins. Co., 149 Fed.Appx. 722, 725 (10th Cir. 2005) (unpublished opinion).  However, Rule 56's "requirements of personal knowledge and competence to testify may be inferred if it is clear from the context of the affidavit that the affiant is testifying from personal knowledge."  Id.

Both Plaintiff and Mr. Braswell have personal knowledge of the circumstances surrounding the traffic stop at issue in this case because they were present in the vehicle when the traffic stop occurred.  Although Plaintiff's affidavit may be construed as self-serving, in that it supports his version of events, our Circuit has recognized that "[a]s long as an affidavit is based upon personal knowledge and set[s] forth facts that would be admissible in evidence, such averment of a party is legally competent to oppose summary judgment, notwithstanding its inherently self-serving nature."  Williams v. Shields, 77 Fed.Appx. 501, 503 (10th Cir. 2003) (unpublished opinion).  Moreover, these affidavits

17

are not conclusory because they include particular facts regarding Plaintiff's speed and manner of driving prior to the traffic stop.  According to the information in the record, there were only three people present at the traffic stop: Plaintiff, Mr. Braswell, and Officer Armijo.  These individuals have given conflicting accounts of Plaintiff's speed and manner of driving immediately prior to the stop and these conflicting accounts are sufficient to create a disputed issue of material fact regarding the existence of reasonable articulable suspicion for the purposes of qualified immunity.  Accordingly, *Defendants' Motion for Summary Judgment* is denied with respect to Officer Armijo.

### iii.    *Vicarious Liability of the Board of Regents*

Defendants contend that the Board of Regents is entitled to summary judgment because "Plaintiff's complaint is devoid of any allegation that the Board of Regents engaged personally in any alleged deprivation of Plaintiff's constitutional rights." [Doc. 32 at 10]  It is well established that governmental officials "cannot be held liable *solely* because [they] employ[] a tortfeasor-or, in other words, [governmental officials] cannot be held liable under § 1983 on a *respondeat superior* theory."  Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 691 (1978) (emphasis in original). "[B]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). "Thus, when a plaintiff sues an official under Bivens or § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and

18

eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." Dodds v. Richardson, 614 F.3d 1185, 1197 (10th Cir. 2010) (quoting Iqbal, 556 U.S. at 677).

To prove that a governmental official violated the constitution by virtue of his or her own conduct, the plaintiff must establish that the defendant-supervisor "create[d], promulgate[d], implement[ed], or in some other way possesse[d] responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which 'subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights ... secured by the Constitution ....'" Id. at 1199 (quoting Iqbal, 556 U.S. at 677).  "A plaintiff may therefore succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Id. "Denying qualified immunity on the basis of such a showing complies with Iqbal's requirement that § 1983 liability only be imposed upon those defendants whose own individual actions cause a constitutional deprivation because it requires plaintiffs prove each defendant took some act with the constitutionally applicable state of mind that caused the alleged constitutional violation." Id. at 1200.

Plaintiff has failed to proffer any evidence from which it reasonably could be inferred that the Board of Regents  promulgated, created, implemented, or possessed

responsibility for the continued operation of a policy regarding extra-jurisdictional traffic stops that lack reasonable articulable suspicion.  See Celotex, 477 U.S. at 322 ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").  Accordingly, *Defendants' Motion for Summary Judgment* is granted with respect to the Board of Regents.

C.      *False Arrest*

To the extent that Plaintiff's Complaint can be construed to state a claim for tortious conduct under New Mexico law, Defendants move for summary judgment alleging that the only intentional tort suggested by Plaintiff's Complaint, false arrest, is not supported by the evidence because the undisputed material facts establish that Officer Armijo did not arrest Plaintiff. [Doc. 32 at 11-13]

The New Mexico Tort Claims Act "was enacted after [the New Mexico Supreme] Court rejected common law sovereign immunity in Hicks v. State, 88 N.M. 588, 544 P.2d 1153 (1975), superseded by statute as stated in Electro–Jet Tool Mfg. Co. v. City of Albuquerque, 114 N.M. 676, 845 P.2d 770 (1992). See §§ 41–4–1 to –29." Upton v. Clovis Mun. Sch. Dist., 141 P.3d 1259, 1261 (N.M. 2006).  The Act "grants all government entities and their employees general immunity from actions in tort, but waives that immunity in certain specified circumstances." Id. "Section 41-4-12 of the

Act sets out the applicable waiver of immunity for the acts or omissions of law

enforcement officers." Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't, 916

P.2d 1313, 1316 (N.M. 1996).  Section 41-4-12 provides as follows:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA
> 1978 does not apply to liability for personal injury, bodily injury, wrongful
> death or property damage resulting from assault, battery, false
> imprisonment, false arrest, malicious prosecution, abuse of process, libel,
> slander, defamation of character, violation of property rights or deprivation
> of any rights, privileges or immunities secured by the constitution and laws
> of the United States or New Mexico when caused by law enforcement
> officers while acting within the scope of their duties.

§ 41-4-12.

The only tort identified in Plaintiff's Complaint and Notice of Tort Claim is the

tort of false arrest. [See Doc. 1-1 at 1-4]  "An officer who has probable cause to arrest a

person cannot be held liable for false arrest or imprisonment, since probable cause

provides him with the necessary authority to carry out the arrest." Santillo v. New

Mexico Dept. of Public Safety, 173 P.3d 6, 10 (N.M. App. 2007).  "A false arrest is

merely one way of committing false imprisonment." Id.  "When a detention exceeds the

boundaries of a permissible investigatory stop, it becomes a de facto arrest requiring

probable cause." State v. Flores, 920 P.2d 1038, 1043 (N.M. App.1996).

In this case, there is no evidence proffered to suggest that Officer Armijo arrested

Plaintiff or otherwise detained him for an unreasonable length of time.  Rather, it is

undisputed that "Officers Fernandez and Maulden intercepted Plaintiff's vehicle and

stopped him, ultimately arresting Plaintiff under suspicion of Driving While Intoxicated."

[Doc. 32 at 3, undisputed fact # 10).  Therefore, *Defendants' Motion for Summary Judgment* is granted with respect to Plaintiff's claim for false arrest under the New Mexico Tort Claims Act.

## IV.    CONCLUSION

*Defendants' Motion for Summary Judgment* is denied in part with respect to Officer Armijo, because conflicting evidence exists regarding whether the initial traffic stop was supported by reasonable articulable suspicion.  However, *Defendants' Motion for Summary Judgment* is granted with respect to the Board of Regents, because there is no evidence to suggest that the Board of Regents promulgated, created, implemented, or possessed responsibility for the continued operation of a policy regarding extra-jurisdictional traffic stops that lack reasonable articulable suspicion. *Defendants' Motion for Summary Judgment* is also granted with respect to Plaintiff's claim for false arrest under the New Mexico Tort Claims Act, because the undisputed material facts establish that Officer Armijo did not arrest Plaintiff.

**IT IS THEREFORE HEREBY ORDERED** that *Defendants' Motion for Summary Judgment* [Doc. 32] is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED** this 25th day of September, 2012, in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
United States District Judge